1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| IRENE CHAVEZ DE ALVAREZ, | ) | Case No.  ED CV 15-1257-SP |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**I.**

**INTRODUCTION**

On June 29, 2015, plaintiff Irene Chavez de Alvarez filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability, disability insurance benefits ("DIB" ) and supplemental security income ("SSI").  The parties have fully briefed the matters in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two disputed issues for decision:  (1) whether the

1

1  Administrative Law Judge ("ALJ") properly considered the opinions of the
2  treating physicians; and (2) whether the ALJ properly considered plaintiff's
3  credibility.[1]  Plaintiff's Memorandum in Support of Complaint ("P. Mem.") at 3-
4  11; Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-10.

5       Having carefully studied the parties' moving and opposing papers, the
6  Administrative Record ("AR"), and the decision of the ALJ, the court concludes
7  that, as detailed herein, the ALJ failed to properly consider the opinion of all the
8  treating physicians and failed to properly consider plaintiff's credibility.  The
9  court therefore remands this matter to the Commissioner in accordance with the
10 principles and instructions enunciated in this Memorandum Opinion and Order.

11 ## II.

12 ## FACTUAL AND PROCEDURAL BACKGROUND

13      Plaintiff, who was forty-six years old on the alleged disability onset date,
14 has a seventh-grade education.  AR at 69, 204.  She has past relevant work as a
15 film cutter and machine packager.  *Id.* at 58-59.

16      On January 19, 2012, plaintiff protectively filed an application for a period
17 of disability, DIB, and SSI, alleging an onset date of November 11, 2010, due to
18 bilateral carpal tunnel, neck pain, left shoulder rotator cuff injury, numbness in
19 hands, depression, and fatigue due to pain.  *Id.* at 69,80.  The applications were
20 denied initially and upon reconsideration, after which plaintiff filed a request for a
21 hearing.  *Id.* at 117-32.

22      On November 8, 2013, the ALJ held a hearing at which plaintiff,

23

24     [1]  Plaintiff failed to raise a third issue – the ALJ failed to discuss Guadalupe
25 Alvarez's lay opinion.  *See* AR at 210-17; *Nguyen v. Chater*, 100 F.3d 1462, 1467
26 (9th Cir. 1996) (an ALJ must consider lay testimony as to a claimant's symptoms
27 and cannot disregard it without a germane reason).  But because plaintiff did not
   raise the issue, she has waived it.  *See Greger v. Barnhart*, 464 F.3d 968, 973 (9th
28 Cir. 2006) (arguments not raised before the District Court are generally waived).

represented by counsel, appeared and testified. *Id*. at 34-68. The ALJ also heard testimony from Gregory Jones, a vocational expert. *Id*. at 57-67. On January 23, 2014, the ALJ denied plaintiff's claim for benefits. *Id*. at 18-29.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since November 11, 2010, the alleged onset date. *Id*. at 20.

At step two, the ALJ found plaintiff suffered from the following severe impairments: multi-level cervical disc protrusion with radiculopathy; lumbar disc protrusions with radiculopathy; bilateral shoulder tendinosis; left shoulder impingement syndrome, status-post left shoulder arthroscopic surgery; bilateral carpal tunnel syndrome; and obesity. *Id*.

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id*. at 23.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[2] and determined plaintiff had the RFC to perform light work, with the limitations that plaintiff could: occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, and scaffolds; frequently push and pull with the upper extremities; and use the upper extremities for occasional overhead reaching and frequent handling and fingering. *Id*. In addition, plaintiff was restricted from working around unprotected heavy machinery or unprotected heights, and required an option to shift positions on an as needed basis in the

---

[2]    Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

1    vicinity of the workstation. *Id.*

2        The ALJ found, at step four, that plaintiff was unable to perform her past

3    relevant work as a machine packager and film cutter. *Id*. at 27-28.

4        At step five, the ALJ determined that given plaintiff's age, education, work

5    experience, and RFC, there were jobs that exist in significant numbers in the

6    national economy that plaintiff could perform, including production assembler,

7    electronic worker, and bench assembler. *Id*. at 28-29. Consequently, the ALJ

8    concluded that plaintiff did not suffer from a disability as defined by the Social

9    Security Act. *Id.* at 29.

10       Plaintiff filed a timely request for review of the ALJ's decision and

11   submitted additional treatment records, but the Appeals Council denied the request

12   for review. *Id.* at 1-3, 9-11; *see id.* at 540-59. The ALJ's decision stands as the

13   final decision of the Commissioner.

**III.**

**STANDARD OF REVIEW**

16       This court is empowered to review decisions by the Commissioner to deny

17   benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security

18   Administration must be upheld if they are free of legal error and supported by

19   substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)

20   (as amended). But if the court determines the ALJ's findings are based on legal

21   error or are not supported by substantial evidence in the record, the court may

22   reject the findings and set aside the decision to deny benefits. *Aukland v.*

23   *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

24   1144, 1147 (9th Cir. 2001).

25       "Substantial evidence is more than a mere scintilla, but less than a

26   preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such

27   "relevant evidence which a reasonable person might accept as adequate to support

28

1   a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

2   F.3d at 459.  To determine whether substantial evidence supports the ALJ's

3   finding, the reviewing court must review the administrative record as a whole,

4   "weighing both the evidence that supports and the evidence that detracts from the

5   ALJ's conclusion." *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be

6   affirmed simply by isolating a specific quantum of supporting evidence.'"

7   *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

8   Cir. 1998)).  If the evidence can reasonably support either affirming or reversing

9   the ALJ's decision, the reviewing court "'may not substitute its judgment for that

10  of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.

11  1992)).

12                                    **IV.**

13                               **DISCUSSION**

14  **A.    The ALJ Failed to Properly Consider the Opinions of the Treating**

15  **       Physicians and Chiropractor**

16          Plaintiff contends the ALJ failed to properly consider the opinions of four

17  treating physicians.  P. Mem. at 3-8.  Specifically, plaintiff argues the ALJ erred

18  because he failed to provide specific and legitimate reasons for rejecting the

19  opinions of Dr. Oscar Rodriguez, Dr. Jonathan Kohan, and Dr. Edwin Haronian.

20  *See id*.  In addition, plaintiff argues the ALJ erroneously attributed  Dr. Khalid

21  Ahmed's opinion to Dr. Rodriguez, and his reasons for rejecting Dr. Ahmed's

22  opinion were not legally sufficient in light of the additional evidence submitted.

23  *See id*. at 5-6.

24          In determining whether a claimant has a medically determinable

25  impairment, among the evidence the ALJ considers is medical evidence.  20

26  C.F.R. §§ 404.1527(b), 416.927(b).  In evaluating medical opinions, the

27  regulations distinguish among three types of physicians:  (1) treating physicians;

28

(2) examining physicians; and (3) non-examining physicians.  20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2).  The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant.  *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285.  If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight.  *Lester*, 81 F.3d at 830.  If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it.  *Id.*  Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians.  *Id.* at 830-31.  The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

### 1.    Dr. Oscar Rodriguez

Dr. Oscar Rodriguez, a chiropractor, treated plaintiff from October 2010 through at least May 2013.[3]  *See* AR at 318, 419.  Dr. Rodriguez started treating

---

[3]    As will be discussed below, a chiropractor is not an acceptable medical source under social security regulations.

plaintiff in connection with plaintiff's worker's compensation claim.[4]  *See id*. at 318.  Prior to plaintiff's December 2011 left shoulder arthroscopy, Dr. Rodriguez observed that plaintiff had, among other things, decreased range of motion in the left shoulder, positive supraspinatus bilaterally, positive Codman's test, positive Hawkins-Kennedy test, tenderness to palpation in the cervical and lumbar spine, and persistent weakness in the rotator cuff muscles.  *Id*. at 314-18.  Plaintiff complained of pain in her shoulder, neck, trapezoids, and reduced ability to perform her activities of daily living.  *See id.*  After the left shoulder arthroscopy, plaintiff reported improvement in her left shoulder but continued to experience shoulder, neck, upper body, lower back, wrist, and hand pain.  *See id*. at 294-96.  Dr. Rodriguez observed that plaintiff, among other things, experienced decreased active range of motion, had tenderness in the trapezius muscle group, had tenderness and trigger points in the levator and rhomboids muscle groups, had weakness in the shoulders, and had tenderness and spasm in the cervical spine.  *See id*. at 293-96.

From a functional standpoint, Dr. Rodriguez opined that plaintiff could work but required accommodations.  *See id*. at 427-28.  Plaintiff could not: bend; stoop; engage in prolonged, repetitive motion, or use of the upper extremities; forcefully grip, grasp, torque, or squeeze with either hand; lift, push, or pull more than ten pounds; and work above shoulder level with the upper left extremity.[5]  *Id*. In addition, plaintiff needed to be allowed to change from sitting and standing positions as needed.  *Id*.

---

[4]   Dr. Rodriguez was the primary treating worker's compensation physician. The other physicians, Dr. Haronian and Dr. Kohan, submitted their reports to Dr. Rodriguez.  *See, e.g.*, AR at 344, 419.

[5]   Dr. Rodriguez's status reports dated January 18, 2012 and February 20, 2013 contain some minor differences.  *See* AR at 427-28.

1

## 2. **Dr. Edwin Haronian**

2      Dr. Haronian, an orthopedic surgeon, treated plaintiff from January 2011

3  through at least May 2013 in conjunction with her worker's compensation claim.

4  *See id*. at 366, 419.  Dr. Haronian observed plaintiff had, among other things:

5  spasm, tenderness, and guarding over the paravertebral musculature; decreased

6  sensation at C6-7 on the left; tenderness to the anterior aspect of the left shoulder

7  and at the AC joint; a positive impingement sign on the left shoulder; and

8  tenderness to the left wrist with decreased grip strength and range of motion.  *Id.*

9  at 267-74, 370-73.  In addition, plaintiff walked and squatted with pain.  *Id*. at

10  373, 375.  Dr. Haronian noted that a December 2010 MRI of plaintiff's left

11  shoulder revealed mild degenerative changes to the AC joint, tendinosis over the

12  supraspinatus tendon along with moderate tendinosis in the distal infraspinatus

13  tendon.  *Id*. at 380; *see id*. at 243-45.  Based on plaintiff's medical history and

14  examinations, Dr. Haronian diagnosed plaintiff with shoulder sprain/strain, wrist

15  tendinitis/bursitis, lumbar sprain/strain, shoulder sprain/strain, and cervical

16  sprain/strain.  *Id*. at 280.

17      In February 2011, Dr. Haronian recommended left shoulder surgery, which

18  was not approved until November 2011.  *Id*. at 261, 381.  Following the December

19  2011 surgery, plaintiff noted improvement in the pain but expressed that she had

20  residual pain and weakness in the left shoulder and continued to have difficulty

21  with pushing, pulling, lifting, and overhead reaching.  *See id*. at 255, 257, 407.

22  Dr. Haronian observed that plaintiff experienced discomfort on elevation of her

23  left upper extremity against gravity at approximately 95 degrees, had positive

24  Phalen signs in both wrists with decreased grip strength and tenderness, had

25  impingement over the left shoulder with decreased range of motion, had spasm

26  and tenderness over the paravertebral muscles of the cervical and lumbar spine

27  with decreased range of motion; and decreased sensation over the C6 and L5

28

1  dermatomes on the left.  *Id.* at 252-58, 403-05.

2       Dr. Haronian treated plaintiff conservatively with medication while

3  awaiting plaintiff's response to treatment with epidural steroid injections from

4  another physician and results of neurodiagnostic studies.  *See id.* at 400-16.  Dr.

5  Haronian recommended carpal tunnel release surgery, which plaintiff finally

6  agreed to obtain in May 2013.[6]  *See id*. at 419-20.  Dr. Haronian deferred opinion

7  as to plaintiff's functional limitations to her primary treating physician, Dr.

8  Rodriguez.  *See id*. at 403-04, 419.

9       **3.    Dr. Jonathan F. Kohan**

10      Dr. Kohan, an anesthesiologist, treated plaintiff from June 2012 through at

11  least March 2013, also in connection with plaintiff's worker's compensation

12  claim.  *See id*. at 346, 349.  Dr. Kohan observed that plaintiff had tenderness to

13  palpation over her paravertebral, trapezius, deltoid, and rhomboids areas with

14  moderate spasm, tenderness over parapinous muscles and shoulder joint,

15  decreased sensation at C6-C7, positive impingement sign on the left shoulder, and

16  positive Tinel's sign.  *Id*. at 353-55.  Based on an examination of plaintiff's

17  medical records and the initial examination, Dr. Kohan's impression was plaintiff

18  had status post left shoulder arthroscopic surgery with residuals, bilateral shoulder

19  tendinosis, multiple level cervical disc protrusion, cervical radiculopathy, bilateral

20  carpal tunnel syndrome, lumbar disc protrusion, and lumbar radiculopathy.  *Id*. at

21  356.  Dr. Kohan recommended a cervical epidural injection at C6-7 and submitted

22  a request.  *Id.* at 358.

23      Dr. Kohan received authorization for and administered the cervical epidural

24  injection in December 2012.  *See id*. at 340.  Plaintiff reported more than fifty

25

26

27      [6]    Plaintiff never underwent carpal tunnel surgery because the insurance
28  company would not authorize it.  *See* AR at 51.

percent improvement after the injection.[7]  *Id*.  Plaintiff continued to complain of neck pain with stiffness and spasm three months after the injection.  *Id*. at 346. Although Dr. Kohan requested authorization for another cervical epidural injection, plaintiff declined.  *See id*. at 346-47.

### 4.   **Dr. Khalid Ahmed**

Dr. Ahmed, an orthopedic surgeon, examined plaintiff on March 8, 2013. *See id*. at 540-59.  Dr. Ahmed did not appear to have reviewed plaintiff's medical records.  *See id*.  Dr. Ahmed observed that plaintiff had, among other things: decreased range of motion in the cervical, thoracic, and lumbar spines; tightness and spasm at the trapezius, sternocleidomastoid, and strap muscles; positive Foramina Compression and Spurling's tests; no sensation on the right side from C5-C8; decreased range of motion on the left shoulder; tenderness on the left shoulder; positive Tinel's and Phalen's test on the wrists; abnormal two point discrimination medial distribution in the wrists; and decreased sensation from L4-S1.  *Id*. at 545-51.  Dr. Ahmed opined that plaintiff suffered sprains or strains of the cervical spine, both hands, and lumbar spine.  *Id*. at 555.  Dr. Ahmed opined that plaintiff could work with the following limitations:  no repetitive motions for the neck; no lifting or carrying any items above fifteen pounds; no overhead work with the left arm; no forceful pushing, pulling, torquing, and squeezing with the left hand; no repeated bending and stooping; no kneeling and squatting; and no prolonged standing, walking and sitting for periods longer then 45 minutes at a time.  *Id*. at 429, 556.

### 5.   **State Agency Physicians**

Four State Agency physicians reviewed plaintiff's medical records and provided opinions concerning her limitations.  *See id*. at 72-77, 83-88, 96-101,

---

[7]   Plaintiff reported a 60-70% improvement after the injection to Dr. Haronian, but also noted that she was still symptomatic.  AR at 411.

107-12. The State Agency physicians all reached the same opined limitations, that plaintiff could: lift or carry twenty pounds occasionally and ten pounds frequently; stand, walk, and sit about six hours in an eight-hour workday; occasionally climb stairs, balance, stoop, kneel, crouch, and crawl; and never climb ladders, ropes, and scaffolds. *See id*. at 76, 87, 100, 111. They also opined that plaintiff should engage in only limited left overhead reaching, handling, and fingering. *See id*. at 76-77, 87-88, 101, 112. The only difference in opinions was that two State Agency physicians opined an additional limitation of limited pushing and pulling functionality in plaintiff's upper left extremity. *See id.* at 100, 111.

### 6.    The ALJ's Findings

The ALJ found plaintiff, in relevant part, had the RFC to perform light work but could never climb ladders, ropes, and scaffolds, and could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. *Id*. at 23. With regard to her upper extremities, the ALJ determined plaintiff could frequently push, pull, handle, and finger, and occasionally engage in overhead reaching. *Id*. The ALJ also found that plaintiff required an option to shift from sitting and standing on an as needed basis. *Id*.

In reaching these findings, the ALJ gave significant weight to the opinions of the State Agency physicians and some weight to Dr. Rodriguez's, Dr. Haronian's, Dr. Kohan's, and Dr. Ahmed's opinions to the extent they were consistent with the ALJ's RFC determination.[8] *Id*. at 26-27. The ALJ discounted Dr. Rodriguez's, Dr. Haronian's, and Dr. Kohan's opinions because they were prepared in the context of a worker's compensation claim and thus the physicians served as plaintiff's advocate, the definition of disability differs in worker's

---

[8]    An ALJ must consider the opinion of every medical opinion in the record. 20 C.F.R. §§ 404.1527(d), 416.927(d). Despite the ALJ's failure to even mention Dr. Ahmed, he actually considered Dr. Ahmed's opinion. The ALJ incorrectly attributed the opinion to Dr. Rodriguez. *See* AR at 26.

1   compensation and social security disability cases, and a disability determination is

2   reserved for the Commissioner. *Id*. at 26.  The ALJ rejected Dr. Ahmed's opinion

3   because the opinion was a checklist style form, the opinion appeared to have been

4   completed as an accommodation to plaintiff, and there was little and vague

5   rationale to support the conclusions. *Id*.  The ALJ erred.

6      As an initial matter, Dr. Rodriguez is a chiropractor, which is not an

7   acceptable medical source.  *See* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1)

8   (chiropractors are not acceptable medical sources).  Therefore, it is proper to give

9   a chiropractor less weight than a physician.  Nevertheless, the ALJ must consider

10  the opinion of Dr. Rodriguez and may only reject it if there is a germane reason.

11  *See Kus v. Astrue*, 276 Fed. Appx. 555, 556-57 (9th Cir. 2008).

12     The ALJ's reasons for rejecting Dr. Rodriguez's, Dr. Haronian's, and Dr.

13  Kohan's opinions and findings all center on the fact that they treated plaintiff in

14  relation to her worker's compensation case.[9]  First, the ALJ strongly implied the

15  opinions and reports were biased and prepared to help plaintiff win her worker's

16  compensation claim.  But an ALJ may not reject an opinion solely on the basis that

17  the source was a physician hired by the claimant for a worker's compensation

18  claim.  *Nguyen*, 100 F.3d at 1464-65 (noting that the source of a report is a factor

19  that justifies rejection only if there is evidence of actual impropriety or no medical

20  basis for that opinion).  In other words, an ALJ may not presume bias.  *See Lester*,

21  81 F.3d at 832.  Here, there was no evidence of impropriety or bias and, indeed,

22  the ALJ did not state that there was actual bias, but instead stated worker

23  compensation physicians "often serve[] as an advocate for the claimant."  AR at

24  26.  The mere fact that Dr. Haronian and Dr. Kohan treated plaintiff in connection

25

26     [9]   Dr. Ahmed also examined plaintiff in connection to her worker's
    compensation claim.  To the extent that the ALJ's reasons for rejecting Dr.
27  Rodriguez's, Dr. Haronian's, and Dr. Kohan's opinions apply to Dr. Ahmed, they
28  are also improper.

to a worker's compensation claim was a not a specific and legitimate reason to give their opinions less weight. Nor was it a germane reason for giving Dr. Rodriguez's opinion less weight. Rejection of Dr. Rodriguez's opinion on this basis amounts to a wholesale rejection of all opinions given in connection to a worker's compensation case and therefore was not germane to Dr. Rodriguez. *See Smolen*, 80 F.3d at 1289 (the ALJ's rejection of plaintiff's family member's testimony as biased "amounted to a wholesale dismissal of the testimony of all [the family] witnesses as a group and therefore does not qualify as a reason germane to each individual who testified").

Second, the ALJ correctly noted that the definition of disability differs in worker's compensation and social security disability claims. Although an ALJ may reject a physician's ultimate disability assessment if it was based on worker's compensation grounds, an ALJ may not reject the objective medical findings. *See Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1104-05 (C.D. Cal. 2002) (citing *Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984)). Here, Dr. Rodriguez, Dr. Haronian, and Dr. Kohan did not opine that plaintiff was disabled. All submitted reports detailed their objective findings. Dr. Rodriguez opined that plaintiff could work with certain functional limitations, Dr. Haronian deferred opinion as to plaintiff's functional limitations to Dr. Rodriguez, and Dr. Kohan did not offer an opinion as to disability or functional limitations. *See* AR at 419, 427-28. Therefore, had Dr. Rodriguez, Dr. Haronian, and Dr. Kohan opined that plaintiff was disabled under the Worker's Compensation scheme, the ALJ could have rejected such opinion. But the ALJ may not reject the medical findings simply because the treatment was provided in the context of a worker's compensation claim.

Finally, the ALJ again correctly noted the ultimate disability determination was within his purview. But, as stated above, Dr. Rodriguez, Dr. Haronian, and Dr. Kohan did not opine that petitioner was disabled under social security

1  regulations.  And the ALJ still must provide specific and legitimate reasons when

2  rejecting a physician's opinion and findings.  *See Smith v. Astrue*, 2011 WL

3  5294848, *4 (N.D. Cal. Nov. 3, 2011) ("Although the treating physician's opinion

4  is not necessarily conclusive as to either a physical condition or the ultimate issue

5  of disability, an ALJ must provide 'specific and legitimate reasons for rejecting the

6  opinion of the treating physician.'") (quoting *Murray v. Heckler*, 722 F.2d 499,

7  502 (9th Cir. 1983)).  Here, the ALJ provided no specific and legitimate reason for

8  rejecting opinions and findings of Dr. Haronian and Dr. Kohan, or germane reason

9  for Dr. Rodriguez.

10       The ALJ stated he considered the objective clinical and diagnostic evidence

11  used by these physicians to reach their conclusions, and found the evidence

12  consistent with his RFC assessment for plaintiff.  AR at 26.  But the ALJ's

13  consideration of the objective evidence is not the same thing as consideration of

14  the findings and opinions of these physicians.  It is apparent the ALJ disregarded

15  these findings and opinions in significant part.  For example, Dr. Rodriguez – to

16  whom Dr. Haronian deferred as to plaintiff's work restrictions (*id.* at 403-04, 419)

17  – opined that plaintiff could not bend or stoop; could not engage in prolonged,

18  repetitive motion, or use of either upper extremity; and could not work above

19  shoulder level with the upper left extremity.  *Id.* at 427-28.  This is inconsistent

20  with the ALJ's determination that plaintiff could, inter alia: occasionally stoop,

21  crouch, and crawl; frequently push, pull, handle, and finger with the upper

22  extremities; and occasionally engage in overhead reaching.  *See id.* at 23.

23       As for Dr. Ahmed, the ALJ's reasons for giving his opinion some weight

24  only to the extent it was consistent with his RFC determination were not specific

25  and legitimate and supported by substantial evidence.[10]  The ALJ characterized Dr.

26

27       [10]  Although Dr. Ahmed may have ultimately treated plaintiff, at the time he

28  wrote his opinion, he had only examined plaintiff on one occasion.  Thus, Dr.

1   Ahmed's opinion as a checklist-style form that was unsupported by rationale.  *See*

2   AR at 26.  An "ALJ need not accept a treating physician's opinion which is brief

3   and conclusionary in form with little in the way of clinical findings to supports

4   [its] conclusions."  *Magallanes*, 881 F.2d at 751 (internal quotation marks and

5   citations omitted); *see Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir.1996)

6   (evidence of an impairment in the form of "check-off reports" may be rejected for

7   lack of explanation of the bases for their conclusions).  The opinion submitted to

8   the ALJ was a conclusory opinion.  *See* AR at 429.  But in her request for review,

9   plaintiff submitted a detailed report from Dr. Ahmed, which is now part of the

10  record.  *See id*. at 540-59; *Brewes v. Comm'r*, 682 F.3d 1157, 1162-63 (9th Cir.

11  2012) (additional evidence submitted to and reviewed by the Appeals Council

12  becomes part of the record).  The submitted report was not a mere checklist-style

13  form.  Instead, it contained a comprehensive report detailing all of Dr. Ahmed's

14  findings.  *See id*. at 540-59.  In the report, Dr. Ahmed noted that he observed that

15  plaintiff, among other things, had decreased range of motion in her cervical spine,

16  tightness and spasm at the trapezius muscle, reduced sensation and strength in the

17  cervical spine, reduced range of motion and tenderness in her left shoulder, and

18  positive Tinel's and Finkelstein's signs in the wrists.  *See id*. at 545-49.  Thus, the

19  record contained medical findings to support Dr. Ahmed's opinion.

20      Accordingly, the ALJ erred because he failed to provide specific and

21  legitimate reasons for giving less weight to the opinions Dr. Haronian, Dr. Kohan,

22  and Dr. Ahmed, and failed to give germane reasons for giving less weight to Dr.

23  Rodriguez's opinion.

24

25

26  ────────────

27  Ahmed was an examining, not a treating, physician.  Nevertheless, as with a
    treating physician, the ALJ must provide specific and legitimate reasons for

28  rejecting the opinion of an examining physician.  *Lester*, 81 F.3d at 830-31.

**B.     The ALJ Failed to Properly Consider Plaintiff's Credibility**

Plaintiff argues the ALJ failed to properly consider her credibility.  P. Mem. at 8-11.  Specifically, plaintiff contends that the reasons cited by the ALJ for finding her less credible were not clear and convincing.  *Id*.

An ALJ must make specific credibility findings, supported by the record. Social Security Ruling 96-7p.  To determine whether testimony concerning symptoms is credible, an ALJ engages in a two-step analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, an ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."  *Smolen*, 80 F.3d at 1281 (citation omitted); *accord Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

"[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).  To permit a meaningful review of the ALJ's credibility determination, the ALJ must "specify which testimony [he] finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination."  *Id.*

An ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities.  *Tommasetti v. Astrue*, 533 F.3d

1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.  The lack of objective

medical evidence to support allegations of limitations is also a factor that may be

considered when evaluating credibility, but it may not be the only factor

considered.  *See Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001) (lack

of corroborative objective medical evidence may be one factor in evaluating

credibility); *Bunnell*, 947 F.2d at 345 (an ALJ "may not reject a claimant's

subjective complaints based solely on a lack of objective medical evidence to fully

corroborate the alleged severity of pain").

At the first step, the ALJ here found plaintiff's medically determinable

impairments could reasonably be expected to cause the symptoms alleged.  AR at

24.  At the second step, because the ALJ did not find any evidence of malingering,

the ALJ was required to provide clear and convincing reasons for discounting

plaintiff's credibility.  The ALJ provided two reasons for discounting plaintiff's

credibility:  (1) her alleged limitations were inconsistent with her daily activities;

and (2) her alleged limitations were inconsistent with the objective medical

evidence.  *Id.*

As an initial matter, plaintiff contends the ALJ failed to specify those

portions of plaintiff's testimony he found lacking in credibility.  P. Mem. at 10.

The ALJ did identify certain testimony given by plaintiff regarding her functional

limitations:

> [Plaintiff] alleged that she has problems with her memory.
> Additionally, she cannot stand for an hour without moving, and she
> was unsure if she could sit for four hours out of an eight-hour period.
> However, she purported that she has to lie down in an eight-hour
> period, because she feels tired.

AR at 24.  The court may assume from this that it is these claimed limitations the

ALJ found not entirely credible, and indeed, the determined RFC does not account

17

1    for these limitations.  But as this testimony does not cover the full scope of

2    plaintiff's claimed limitations not included in the ALJ's RFC determination, the

3    court questions whether the ALJ completely identified the testimony he found not

4    credible.  In any event, the reasons given by the ALJ for finding plaintiff less than

5    entirely credible were not clear and convincing and supported by substantial

6    evidence.

7         First, the ALJ found plaintiff less credible because her daily activities were

8    inconsistent with her claimed degree of impairment and showed she had some

9    ability to work.  *Id.*; *see Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002)

10   (in making a credibility determination, an ALJ may consider inconsistencies

11   between a claimant's testimony and conduct).  Specifically, the ALJ noted plaintiff

12   was able to prepare simple meals, perform household chores, attend church twice a

13   week, occasionally care for her granddaughter, shop, and drive.  AR at 24.

14        At the hearing, plaintiff testified that her carpal tunnel caused her wrists to

15   become numb, have a tingling sensation, hurt, and swell.  *Id.* at 45.  Plaintiff

16   testified that she had pain from the neck down to her leg and she would only use

17   her right hand for chores due to pain.  *Id*. at 42, 45-46.  Plaintiff further testified

18   that she did not think she could sit or stand for four hours in an eight-hour day.  *Id*.

19   at 52-53.  In her Function Report, plaintiff reported she made simple meals that

20   took only ten minutes, did light cleaning for ten minutes once a week, walked for

21   fifteen minutes a day, and could only read and watch television for thirty minutes

22   before her neck would hurt.  *See id*. at 220-22.

23        The evidence does not support the ALJ's finding that plaintiff's daily

24   activities were inconsistent with her alleged limitations.  "[T]he mere fact that a

25   plaintiff has carried on certain daily activities, such as grocery shopping, driving a

26   car, or limited walking for exercise, does not in any way detract from her

27   credibility as to her overall disability."  *Vertigan v. Halter*, 260 F.3d 1044, 1050

28

                                        18

1   (9th Cir. 2001).  None of plaintiff's activities were inconsistent with her alleged

2   limitations.  Plaintiff could cook and clean but for short periods of time only.  AR

3   at 220.  When plaintiff cleaned, she only used her right hand due to pain on the left

4   side.  *Id.* at 41-42; *see also id.* at 219.  Plaintiff babysat her granddaughter but only

5   once or twice a month.  *Id.* at 40-41.  Plaintiff was able to drive herself to church

6   twice a week but could not sit through the one-hour service before having to shift

7   positions.  *Id.* at 50.  None of these activities were inconsistent with plaintiff's

8   alleged limitations.

9       Second, the evidence shows that, contrary to the ALJ's finding, the

10  objective medical evidence was consistent with plaintiff's testimony.  *See Rollins*,

11  261 F.3d at 856-57 (lack of objective medicine supporting symptoms is one factor

12  in evaluating credibility).  The ALJ appears to selectively cite to periods of

13  improvement and only records from a limited period to support his argument.  *See*

14  AR at 24-25. But this court must review the ALJ's decision in light of the record

15  as a whole, including the subsequently submitted opinion from Dr. Ahmed.  *See*

16  *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012).  When looking at the entire

17  record, substantial evidence did not support the ALJ's decision.

18      With regard to plaintiff's left shoulder, the ALJ correctly noted that plaintiff

19  experienced improvement after her left shoulder arthroscopy, but plaintiff

20  continued to experience pain, tenderness, and impingement.  *See, e.g.,* AR at 255,

21  257, 407.  Moreover, the improvement plaintiff experienced in her range of motion

22  noted by the ALJ subsequently decreased.  *See id.* at 296, 341, 547.

23      Regarding plaintiff's cervical spine, the ALJ cited to an April 2011 MRI

24  which revealed multiple level cervical disc protrusion but no foraminal stenosis

25  and a November 2011 examination during which plaintiff exhibited a normal

26  range of motion in the neck as evidence that plaintiff's upper extremity symptoms

27  were not as severe as plaintiff alleged.  *See id.* at 25.  But the ALJ appeared to

28

ignore the subsequent records which show that plaintiff had tenderness, muscle spasm, positive foraminal compression tests, decreased range of motion on occasion, and decreased sensation. *See id.* at 293-94, 340-45. The ALJ also cited plaintiff's decision not to proceed with another epidural injection. *See id*. at 25, 413. While the failure to seek treatment is a reason for finding a claimant less credible, here the ALJ failed to consider a possible reason. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (failure to seek treatment may be a basis for an adverse credibility finding unless there was a good reason for not doing so). In requesting authorization for the epidural injections, Dr. Kohan indicated steroid injections only provide temporary pain relief and do not improve function. AR at 358.

Finally, with regard to plaintiff's wrist, the ALJ found plaintiff suffered from carpal tunnel syndrome but her symptoms were not as severe as alleged. Specifically, the ALJ noted plaintiff's initial tests in January 2011 were negative, but despite her subsequent positive tests she declined surgery. *See id*. at 25. Further, the ALJ noted that, in spite of her impairment, plaintiff was able to drive short distance, prepare simple meals, and perform simple chores. *See id.* Again, the ALJ selectively focused on a few records while ignoring the record as a whole. Plaintiff's physicians found, among other things, she had positive Phalen's signs in both wrists, weak grip strength, decreased sensation, and abnormal two point discrimination. *See, e.g., id*. at 263, 403, 549-50. These objective findings were consistent with plaintiff's alleged limitations and symptoms. Moreover, plaintiff only initially declined surgical intervention. *Id*. at 420. Plaintiff agreed to proceed with surgery as her symptoms increased, but the insurance company declined authorization. *See id*. at 51, 420. Finally, as discussed above, plaintiff's ability to perform some activities of daily living was not inconsistent with plaintiff's subjective complaints.

1    Defendant correctly notes that if the objective medical evidence can
2    reasonably support either affirming or reversing the ALJ's decision, the reviewing
3    court may not substitute its judgment. *See Aukland*, 257 F.3d at 1035.  Arguably,
4    the medical evidence presented to the ALJ can support the ALJ's decision.  But
5    when taking into account the ALJ's plain focus on objective findings from a
6    narrow time period – primarily 2011 – and lack of consideration of Dr. Ahmed's
7    report, which was submitted on appeal, the ALJ's discounting of plaintiff's
8    credibility on the basis that her alleged symptoms were inconsistent with the
9    objective evidence was not supported by substantial evidence.  Moreover, lack of
10   supporting medical evidence, standing alone, in not a sufficient reasons for
11   discounting plaintiff's credibility. *Bunnell*, 947 F.2d at 345.

12   Accordingly, the ALJ's reasons for discounting plaintiff's credibility were
13   neither clear and convincing nor supported by substantial evidence.

14                                     **V.**

15                        **REMAND IS APPROPRIATE**

16   The decision whether to remand for further proceedings or reverse and
17   award benefits is within the discretion of the district court. *McAllister v. Sullivan*,
18   888 F.2d 599, 603 (9th Cir. 1989).  It is appropriate for the court to exercise this
19   discretion to direct an immediate award of benefits where: "(1) the record has been
20   fully developed and further administrative proceedings would serve no useful
21   purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting
22   evidence, whether claimant testimony or medical opinions; and (3) if the
23   improperly discredited evidence were credited as true, the ALJ would be required
24   to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020
25   (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with
26   instructions to calculate and award benefits).  But where there are outstanding
27   issues that must be resolved before a determination can be made, or it is not clear

28

1  from the record that the ALJ would be required to find a plaintiff disabled if all the

2  evidence were properly evaluated, remand for further proceedings is appropriate.

3  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*,

4  211 F.3d 1172, 1179-80 (9th Cir. 2000).  In addition, the court must "remand for

5  further proceedings when, even though all conditions of the credit-as-true rule are

6  satisfied, an evaluation of the record as a whole creates serious doubt that a

7  claimant is, in fact, disabled."  *Garrison*, 759 F.3d at 1021.

8      Here, remand is required because the ALJ erred in failing to properly

9  evaluate Dr. Rodriguez's, Dr. Haronian's, Dr. Kohan's, and Dr. Ahmed's

10  opinions, and in failing to properly consider plaintiff's credibility.  These opinions

11  must be reconsidered, and plaintiff's RFC reassessed, before it can be determined

12  whether plaintiff is disabled within the meaning of the Social Security Act.  On

13  remand, the ALJ shall reconsider all of the medical and lay opinions.  The ALJ

14  shall then redetermine which impairments are severe, reassess plaintiff's RFC, and

15  proceed through steps four and five to determine what work, if any, plaintiff is

16  capable of performing.

17                                        **VI.**

18                                 **CONCLUSION**

19      IT IS THEREFORE ORDERED that Judgment shall be entered

20  REVERSING the decision of the Commissioner denying benefits, and

21  REMANDING the matter to the Commissioner for further administrative action

22  consistent with this decision.

23

24  DATED: September 30, 2016

25

26                                        _____
                                          SHERI PYM
                                          United States Magistrate Judge

27

28